Scribner, J.
This is petition in error to reverse the judgment of the ■court of common pleas. On the 1st of April, 1888, William Gilday, the intestate of plaintiff below was a brakeman upon a freight train, in the employ of the railroad company. He had been in that service for several months prior to that time. On that day he was employed as a forward brakeman upon a train of coal cars made up at Elyria, consisting of about forty-five cars, which train left Elyria, bound westward,somewhere about 2 o’clock in the afternoon of that day. When it reached a station known as Lacarne,in the vicinity of Port Clinton, the freight train was required to ■enter upon a side track in order to permit of the passage of a passenger train upon the main track. It reached Lacarne somewhere from 10 to 12 o’clock in the night time — a wet and slippery night, it would seem from the testimony. It became the duty of the decedent Gilday, as the forward brakeman, and he was required, to set the brakes as the train entered upon the side track, in order to stop the train. It appears from the testimony that he had set the brakes upon the first and second car from the engine. His lamp was placed upon the rear or east end of the second car, while he stepped upon the west end of the third car, and proceeded to set the brake upon that car, upon the west end of the car. While engaged in performing that duty, while winding up the brake, the rachet which held the brake in position by reason of its entering upon the teeth of the brake-wheel, slipped: The brake being wound up to the right, the result was, as the testimony shows, the giving away of the ratchet,and the brake-wheel with the brake staff revolved violently to the left, and the decedent having hold of it,he was thrown under the wheels of the car, and was so injured that he shortly thereafter died. His sister was appointed the administratrix upon his estate by the probate court of Lucas county, and brought this action to' recover *651 damages alleged to have been sustained by herself and her sister by reason of the death of the young man, arising in the manner that I have stated. She alleges in her petition that the decedent furnished the bupport of herself and her sister, and that she has sustained damages by reason of his death in the manner stated, to the extent permitted to be recovered by the statute.
There are several grounds of negligence alleged in the amended petition. One is, that the locomotive engine was equipped with a steam brake, and that the steam brake was out of order at the time of the accident, and that the negligence of the company in failing to keep this steam brake in order contributed to the accident.
On the trial of the cause the court ruled cut all the testimony given upon that subject, properly, we think, because it was apparent that whatever defect may have existed in the steam brake, if any such there were, in no manner contributed to the accident. It was also alleged in the petition that one of the brake chains was so carelessly and negligently connected to the coal cars that it was impossible to set the brake to hold it, and that that contributed also to the accident. But while the testimony shows that one of the brake chains had become disconnected and unhooked from the brake, that defect, if such it was, was upon the fourth car from the engine, and as it is quite clear that the accident occurred while the young man was setting the brake upon the end of the third car, it is apparent that the disconnection of the brake chain from the brake upon the fourth car had nothing to do with the accident.
So we are brought to a consideration of the question'arising upon the facts as shown in the record as regards the condition and situation of the brake upon the west end of the third car, which, as is very correctly stated in the answer, was the occasion of the accident. The wheel connected with the brake staff is attached to and forms a part of the record, and it appears upon an inspection of this, that three of the teeth or cogs of this wheel, the cogs being intended to hold the ratchet upon the setting of the brake and winding up of the chain, are broken; .and there can be no reasonable question but what it was by reason of these defects in. the teeth of this wheel, that the ratchet, upon *652 being set, came in position where these brakes occurred, and slipped, and thereby the wheel and the staff rapidly revolving,the decedent was thrown from the top of the car, and that that was the cause of the accident.
The company says in regard to the alleged negligence on their part, that it had employed competent and experienced inspectors to inspect this and other trains at the yard in Elyria before the train was sent out, and that it was the duty of these inspectors to test these brakes before they were sent out; and that if they failed to apply the proper test in order to determine whether or not they were in a safe and sound condition, it was the negligence of the inspectors, and under the rulings of the supreme court in Webb’s case, 12 Ohio St., and Fitzpatrick’s case, 42 Ohio St., they were fellow servants o£ the decedent, for whose negligence the company is not responsible to the decedent, and the turning point of this controversy appears to hinge upon this position.
It is apparent upon an inspection of these broken teeth that they, at the time of the accident, were of long standing: they are worn and smooth. The testimony of witnesses introduced on behalf of the defendant — expert witnesses — ■ the foreman of the car inspectors in the Toledo yard and the man who removed the wheel from this brakestaff, is, that they are ancient brakes. So it is conclusively shown, both from an inspection and from the testimony, that these defects in this wheel which caused the accident were of long standing, and that the wheel had been dangerous with these defects for a considerable period of time.
One of the inspectors at the yard at Elyria, a man by the name of Howe, is placed upon the stand, and testifies in the case; and it appears from his testimony that there were two inspectors employed by the Lake Shore Co. at the time that this train was sent out — one a day inspector and one a night inspector, to perform this service. One other railroad company, from which perhaps this load of coal had been received — the Lorain, Cleveland & Wheeling — had also two inspectors in the yard. It is admitted in the record of the case, however, that the car was a Lake Shore car — a car belonging to the defendant company in this action. The testimony of the other inspector was not given in this connec *653 tion' in the case"; It seems somewhat important, therefore, to' look at the testimony of'this inspector, as bearing upon the question, perhaps, as to the character of this inspection, as-to whether it was insufficient.; and is so,‘whether the railroad company had notice of the alleged insufficient manner in which the inspection was made. In his testimony this inquiry is made of him:
“Q, When you start to inspect cars on the inspection track, what implements do you have with you? A. I generally take a hammer and a monkey wrench, when I look a train over.
“Q. And- when you go to a car, you go down "one "side and up the other? A. Yes, sir.
“Q. Go over the top? A. No, sir.
“Q. State what you do. A. I look the train over. If they are all right, that settles it — ■
• The Court: “Q. You are asked to state particularly — ■
A. I examine all there is about the car.
“Q Assume that we don’t any of us know how a car is inspected. A. I look right under, and go under the car, and see if it is all right. I look at the wheels, and see if the drawbars are all right, and trucks are all right, and see if it is fit to run.
Then again—
“Q, In examining the wheels, what do you do? A, I look them all over close. If one is broke, I stop the car and put a pair in.
“Q. How do you determine whether the wheel is broke or not? A. I look at it.
The Court: “Q. What do you call a break? A. A crack, or a piece of a flange gone. Sometimes a piece of a flange is broke out four or five inches; sometimes larger.
Mr. Potter:- “Q. Do you strike the wheels at all with your hammer? A. No, sir: I don’t. Some parties do, but I don’t.
“Q. What do you do in connection with the examination of coupling apparatus? What do you inspect — what do you examine? A, I have nothing to do with that. If there is a broken shackle in the drawbar, I mark a broken shackle on the end, so they can see it, and they will take it out and put one in that end — the men that makes up the train.
*654 “Q. In the inspection of cars, about how ■ long does it take you to make an inspection — the usual and ordinary inspection of a car or cars, about how.long does it occupy— . say a train of forty or forty-five cars? A. It took me generally about 40 minutes,; sometimes 50,.
On cross-examination he.said:
“Q. You inspect forty cars sometimes in 40 minutes? A. I said 40 in 50 minutes. That ain’t no trouble to do.
“Q. You frequently do that? A. Yes, sir: I have done, it hundreds of times.
“Q. Who is your immediate superior? A. Mr. Merritt, of Cleveland, and Mr. W. O. Smith; Mr. Rowe.
“Q. How often would those gentlemen be in your yard? A. Ordinarily would come around once in a while, I couldn’t tell you how often — once a month, sometimes once in two weeks.
“Q. And did they know that you could inspect and did. inspect cars in 50 minutes? A. Yes, sir.
“Q. Or have seen you do it? A. I have been right under along in the yard; we had to do it.
“Q, You examined each wheel? A. Yes, sir: I looked, them over as I went along.
“Q. You examined the chains? A. Yes, sir.
”Q. You examined the brakes? A. Yes, sir: I can -see whether they are brakes fit to go or not by looking at them.
“Q. Get up and give the brake a turn? A. If the chain is too long, I out the chain off and put it on again.
“Q. Did you set the brake by turning it? A. No, sir.
“Q. Hid you test the brake wheel? A. If the brake wheel was broke I could see it.”
This is the only testimony contained in the record as to the manner in which the inspection was made. And it appears from the testimony that the inspector, according to his statement, being pressed for time, passed rapidly along the train, inspecting a train of forty or forty-five cars in from 40 to 50 minutes, looking at them; but in the case of the brakes failing to apply any test whatever — lading to turn the wheel, but simply trusting to such an examination and such knowledge as he might be able to obtain by passing along the train, and looking at the different appliances in use upon it. And it further appears from the testimony *655 of this witness — and there is nothing in the record to contradict it — that the superior officers, standing in the shoes .of and representing the company, were aware of the manner in which this' inspection was made.
In the answer to the amended petition in the case the company by its counsel states the duty of the inspectors, as we understand it to be:
“That in the inspection of said cars it is the duty'bf said inspector to examine and test, among other things, the brake staff, chains, and ratchets upon said cars, and if the same are out of order or broken, to repair them, and if not able to make the repair, to set them out of the train and send them to shop for proper.repairs.
“That said inspection was made of said cars,and the same passed by said inspectors and found by them in proper order and repair.
“That after leaving Elyria and before coming to said LaCarne, said freight train was stopped a great many times by the application of the brakes upon said cars, the said William Gilday being the head brakeman and the brakes; having been set by him upon the first, second, third, fourth and other cars from the engine; and each time that the train was brought to a stop, prior to its stopping at LaCarne, the said brakes worked properly and were set by said1 William Gilday upon both said third and fourth cars from the engine.
“That between the time of the letting off of the brakes on said cars after the stop made prior to that at LaCarne, one end of the brake chain upon the fourth car from said •engine had become unhooked and detached from its fastening, but was not broken, and the same was at the time wholly unknown to said decedent, or to said defendant or any of its employes.
“That after the accident to said Gilday at LaCarne the brake chain upon the fourth car was found unhooked, and hooked up again in its proper place, and thereafter used in setting brakes upon said car,
“That the third car back from the engine was one of defendant’s cars marked “D Eo. 13647.” On the end of the car nearest the said locomotive, on the north side of the car, was the brake apparatus to said third car.
*656 “As said freight train approached LaOarne, the signal was given to stop said train, and thereupon, as was usual and customary in the stopping of said trains, Gilday, as head brakeman, started back from the head of the train and began setting-brakes upon the cars, Said Gilday had set the brakes upon the first and second cars and placed his lantern on the end of the second car', next to the third car and in close proximity to the third car, and thereafter commenced setting up the brake upon said third car, when suddenly the stop and ratchet latch of the brake upon said third car slipped past or broke out a portion of the teeth in the ratchet wheel on the under side, and Gilday slipped, fell, and was thrown down in between the second and third cars on the rail, and his lower limbs were caught and run over by the front or forward wheels of the third car. It had been raining, and the place where Gilday was standing was wet and slippery,
“Said answering defendant denies that said deceased fell from the fourth car, or that the unhooked chain upon the fourth car had anything whatever to do with said accident. Defendant says that the brake apparatus upon said fourth car was 35 or 40 feet back towards the back end of the train, and easterly of where said Gilday slipped and fell, and that he was not upon the fourth car when he slipped and fell.
“Said answering defendant says that after train had come to a stop at LaOarne and the cars carefully examined, it was found that said Gilday bad slipped and fell between the second and third cars while attempting to set the brake upon the third car.
“Defendant says that upon close examination of the rachet wheel upon said car No. 13647, where said Gilday slipped and fell, it was found that on the under side of said ratchet wheel, and not patent to view, some three of the teeth of said wheel had been broken off on the under side, and when the brake was set up the same would let itself off at the broken teeth on a slight jar or touch, Said defendant says that said ratchet wheel if broken when said train left Elyria, the same was unknown to said defendant or any o'f its officers or employes. That the said break or defect in said wheel was not patent to view, either to said Gilday *657 or to said defendant, its officers or employes, and if, at the time of the inspection of said brake, it was then defective, said inspectors carelessly omitted to detect and discover the same and negligently permitted said car to remain in said train, and the said Gilday in consequence thereof was injured, such injury was due to the negligence of said inspectors, his fellow servants and co-employes, and not owing to any negligence or want of proper care on the part of said defendant, its officers, agents, or employes in authority over him.” ■
Now this statement of the case we fully concur in: that in consequence of this defect,or of these inspectors’ neglect to apply the proper test in order to ascertain and determine whether this apparatus was in good condition or not, if it was then defective, and ths inspector carelessly failed to detect and discover the same, and negligently permitted the car to go out in that condition, then the negligence was imputable to the inspectors. The testimony of this inspector is that he did permit this car to go out in this condition. It plainly appears that this wheel was defective; that these breaks in these teeth existod for a long period of time; and that these inspectors failed to apply the test which the answer says it was their duty to apply, in order to ascertain and determine whether or not the appliance was in a fit and proper condition to be sent out. And if it did not appear in this case that the superior officers representing the company had knowledge of this careless and inefficient manner of making these inspections, and were unaware of the manner in which these inspections were being made, and took-no steps, as far as it appears in this case, to reform the method of inspection, we should coincide with the argument of counsel for plaintiff in error here,'and hold on the authority of Webb’s case and the Fitzpatrick case, to which I have referred, that the company would not be liable here; but inasmuch as it appears from the testimony of the inspector himself that those superior officers were aware of the hasty and imperfect manner in which these inspections were made, we feel that the company ought not to stand excused - from the responsibility for the negligence of these inspectors in sending out the train in the condition in which it was found.
*658 It is not suggested nor intimated anywhere in this case, that the decedent was negligent in any respect whatever; that he omitted in any regard any duty incumbent upon him; and the allegations of the petition that he was free from fault in this matter are not denied in the answer.
In this connection I desire to call the attention of the bar to the settled and well established rule in a majority of the courts as to the duties imposed upon a railway company in providing and keeping in repair its machinery, as that rule is stated in the Northern Pacific R. R. Co. v. Hilliard, 116 U. S., 642. I read from page 647:
.“The general doctrine as to the exemption of an employer from liability for injuries to a servant, caused by the negligence of a fellow servant in a common employment, is. well settled. When several persons are thus employed, there is necessarily incident to the service of each the risk that the others may fail in that care and vigilance which are essential to his safety. In undertaking the service, he assumes that risk, and, if he should suffer, he cannot recover from his employer. He is supposed to have taken it into consideration when he arranged for his compensation. As we said on a former occasion: ‘He cannot in reason complain if he suffers from a risk which he has voluntarily assumed, and for the assumption of which he has paid.’ Chicago & Milwaukee Railroad Co. v. Ross, 112 U. S., 877, 383.
“It is equally well settled, however, that it is the duty of the employer to select and retain servants whu are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skilful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him. This doctrine has been so frequently asserted by *659 couits of the highest character, that it can hardly be considered as any longer open to serious question.”.
. And the learned judge who delivered the opinion in that case proceeds to review a vaBt number of cases sustaining' that position.
Here a fatal defect caused the death of a young man without any fault on his part; and it is a conceded fact that this defect had existed for a long period of time. It was a part of the machinery and one of the appliances which was furnished to this decedent for use while in the service of the company. While it is entirely clear in this state that the employment of competent and careful inspectors by the company will relieve it from responsibility for any negligence on the part of the inspectors in performing their duty, where the company itself is not in fault in that regard, yet if the inspectors negligently perform their duty, imperfectly perform the high trust imposed upon them, and which involves the lives and limbs of employes of the company, and this is known to the company, or to the officer who represents the company, or by reasonable care and diligence might have been known to them, the company would not be absolved from liability or responsibility under the circumstances which the testimony in this record tends to show.
The court in its charge to the jury called its attention to this rule of law:
“In considering the evidence, you will naturally first inquire in^what^manner and under what circumstances did the deceased receive his injury ? Having determined this, you will next inquire whether the injury resulted from any negligence on the part of the defendant. You will look at all the facts and circumstances shown by the evidence. If the injury was caused while the deceased was setting or attempting to set a brake attached to one of the cars, was the brake defective? If so, in what respect was it defective? Did the company know the defect, or was the defect of such a character, and had it existed for such a length of time, that the railroad company ought, in the exercise of reasonable care on its part, to have known it? It was the duty of the company to use reasonable care to provide and maintain for the use of its employes reasonably safe and suitable *660 cars and apparatus. It did not guarantee the absolute safety and sufficiency of its cars and appliances, but it was bound only to use reasonable care- and caution, which is such a degree of care as is usually exercised under similar cricumstances by persons of ordinary prudence, or by corporations engaged in like business, and conducting it with ordinary care and prudence. What would be regarded by the good common sense of mankind as reasonable care, under all the circumstances, that is the measure of defendant’s duty.
“To charge the railroad company with negligence by reason of a defect in the brake or brake-wheel, which it is claimed caused the injury, it must be shown that the company had knowledge or notice of such defect, or that in the exercise of ordinary and reasonable care, as I have defined it, it might have acquired such knowledge or notice. Knowledge of the defect on the part of the company must be proved, or the defect must be of such a nature, and must have existed for such a length of time,that knowledge or notice may be reasonably inferred,”
There is also set out in the answer a contract entered into by the decedent at the time, it is said, he entered the service. The contract was given in evidence, and was attached to and formed a part of the bill of exceptions; and by its terms decedent undertook to perform certain duties in the way of examining the appliances upon the cars upon which he was to be employed. He bound himself to perform and discharge that duty in the manner that is here stated. He acknowledged the receipt of a copy of the printed orders, rules and regulations of the company, also a copy of this agreement; and he thereby agrees with the company, in consideration of the payment of the wages stipulated, “that I will, so long as I remain in its service, faithfully respect and obey all said orders, rules, and regulations, and all others which may be adopted, and of which I may have notice; and J do further agree, that I will for myself, in all cases, before exposing myself in working or in being on the tracks or grounds of the company, or in working with or being in any manner on or with its cars, engines, machinery or tools, examine, for my own safety, the condition of all machinery, tools, tracks, cars, engines, or whatever I may undertake to work upon or with, before *661 I make use of or expose myself on or with the same, so-as to ascertain, so far as I reasonably can, their condition and soundness; and that I will promptly report, either to the superintendent of the company, or its agent, who may be my superior officer, any defect in any track, machinery, tools or property of the company, affecting the safety of any one using or operating upon or with the same.” There is a further stipulation which appears to have been erased, appearing in the agreement, which the supreme court of this state have held to be void and contrary to public policy. There has been no court which has held the objection good to the right to recover, based upon this provision of this contract.
It would scarcely be expected that a brakeman of a train made up in a yard where inspectors are provided should be looked to to make any careful investigation of a train of cars upon which he was about to be sent out; and over and above all that, it is not averred in the answer, nor alluded to anywhere in the testimony, that this brakeman was guilty of any negligence with regard to the provisions of this contract.
Then again it is denied in the answer that the decedent contributed to the support of these two sisters. It was alleged in the petition. The testimony tends to support the allegations-of the petition in that regard. It is also denied that the decedent was a resident of Lucas county at • the time of his death, and that the probate court of Lucas county had any power to grant administration upon his estate; but we can scarcely see how an appointment of that kind can be collaterally questioned in a suit of this character.
The verdict rendered in the case was for $1000 — a very moderate sum — and it does not appear that the jury, so far as this action was concerned, were in any manner influenced improperly, or in the considerations which should have entered into the determination of the case on their part, as to the amount allowed.
As to the only ground alleged in the motion for a new trial, that the verdict is not sustained by the evidence and is contrary to the law, I think I have sufficiently stated the views of the court upon the case to indicate that the judg *662 ment should be affirmed. It will be affirmed accordingly; but we think there was sufficient in it to justify the railroad company to appeal to this court, and there will be no penalty.
E. D. Potter, Jr., for Plaintiff in Error.
Scribner & Hurd, for Defendant in Error.